UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | | |
|---|---|---|
| DAWN BERRY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:24-CV-25-ZMB |
| | ) | |
| MISSOURI DEPARTMENT OF | ) | |
| CORRECTIONS WOMEN'S | ) | |
| EASTERN RECEPTIONN, DIAGNOSTIC, | ) | |
| AND CORRECTIONS CENTER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Before the Court is the remaining individual Defendants' Motion to Dismiss Case. Doc. 79. Because Plaintiff Dawn Berry fails to state a cognizable claim against these Defendants despite multiple attempts, the Court grants the motion and dismisses this case.

## BACKGROUND

### I.    Factual Background[1]

In 2020, Brittany Berry (Brittany) pleaded guilty to felony possession of a controlled substance and was sentenced to probation with a suspended imposition of sentence. Doc. 53 ¶¶ 22–23. After multiple violations over the next few months, the state court revoked Brittany's probation. *Id.* ¶ 24. The court later determined that Brittany had "serious mental health issues" that prevented her from participating in an alternative treatment program and ordered her detained. *Id.* ¶ 25; Doc. 53-1. Nine months later, after Brittany committed another probation violation, she was sentenced to 120 days in the Missouri Department of Corrections (MDOC) and committed to the Women's Eastern Reception, Diagnostic, and Correctional Center (WERDCC). Doc. 53 ¶¶ 26–27; Doc. 53-1.

---

[1] The Court accepts as true the following well-pled facts for the purpose of this motion. *See infra* at 3.

In May 2021, Brittany hung herself in the shower area of WERDCC with a bedsheet. Doc. 53 ¶¶ 27–29. Surveillance footage shows her walk into the shower area carrying a bedsheet. *Id.* ¶ 28. WERDCC staff failed to notice Brittany's absence from the "chow hall" and did not see her enter the shower with a bedsheet. *Id.* ¶ 30. Further, Defendants allegedly failed to safeguard Brittany despite her established "serious mental health issues." *Id.* ¶ 31.

## II.     Procedural Background

The procedural history of this case is tortured despite its relative infancy. Brittany's mother, Dawn Berry (Dawn), brought the action in March 2024 against MDOC and WERDCC. Doc. 1. Just two months later, Dawn amended her complaint to add several individual defendants in both their individual and official capacities. Doc. 13. The Court quickly dismissed all claims against MDOC and WERDCC, leaving the claims against the individual Defendants. Docs. 20, 21.

Dawn struggled to effect service, resulting in the dismissal of several Defendants, *see* Docs. 22–30, but the Court granted her leave to file a second amended complaint, Docs. 33–34. Yet the service issues persisted, leading the Court to dismiss the case. Doc. 44. After the Court denied reconsideration, Docs. 45–46, Dawn moved for leave to file her Third Amended Complaint ("TAC"). Doc. 47. Despite finding that the latest pleading "appears to be an attempt to circumvent the previous dismissal [and] order denying reconsideration," the Court again allowed the amendment. Doc. 52. That new complaint asserted Eighth and Fourteenth Amendment claims (Counts I–II, V), municipal-liability claims (Counts III–IV), and state-law claims (Counts VI–VII). Doc. 53.

Dawn still failed to serve one Defendant, who was dismissed, but the other individual Defendants finally appeared more than a year after the case began. Docs. 56–63. MDOC and WERDCC moved to dismiss, Doc. 65, but the remaining Defendants failed to respond to the TAC despite prompting from the Court, Doc. 64. Weeks later, Dawn moved for entry of default against the individual Defendants, and the Clerk of Court entered default. Docs. 68–69. During a status hearing, and at the parties' behest, the Court set aside the default. Doc. 78. The Court also granted a renewed motion to dismiss MDOC and WERDCC. *Id.* Finally, the individual Defendants were given leave to file a new motion to dismiss, which is now ripe for adjudication. *Id.*; Docs. 79–82.

2

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss for "failure to state a claim upon which relief can be granted." The purpose of such motions "is to test the legal sufficiency of the complaint." *Ford v. R.J. Reynolds Tobacco Co.*, 553 F. Supp. 3d 693, 697 (E.D. Mo. 2021). To survive a Rule 12(b)(6) motion, the complaint must include "a short and plain statement of the claim showing that the [plaintiff] is entitled to relief" and providing notice of the grounds on which the claim rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting FED. R. CIV. P. 8(a)(2)). Additionally, the complaint must include sufficient detail to make a claim "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although "[s]pecific facts are not necessary," the plaintiff must include "either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Delker v. MasterCard Int'l*, 21 F.4th 1019, 1024 (8th Cir. 2022) (quotations omitted). The question is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of the claim. *Id.*

At the motion-to-dismiss stage, the Court must accept as true the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See Brokken v. Hennepin Cnty.*, 140 F.4th 445, 450 (8th Cir. 2025) (citation omitted). However, the Court does not "presume the truth of legal conclusions." *Jones v. City of St. Louis*, 104 F.4th 1043, 1046 (8th Cir. 2024) (citation omitted); *see also Kulkay v. Roy*, 847 F.3d 637, 641 (8th Cir. 2017) ("[T]he court is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations."). Ultimately, this analysis is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009).

3

## DISCUSSION

While at points less than clear, the TAC asserts a range of allegations. But the individual Defendants correctly argue that Dawn fails to state a claim on any of her federal causes of action. Dawn falls short of pleading an Eighth or Fourteenth Amendment claim against the individual Defendants, and her failure to establish an underlying constitutional violation defeats her municipal-liability claims. Likewise, because her federal claims fail, the Court declines to exercise supplemental jurisdiction over the remaining state-law claims.

### I.    Official-Capacity Claims

First, the Court must address a housekeeping matter. While Dawn sued most of the individual Defendants in both their official and individual capacities, Doc. 53 ¶¶ 6–16, she has since conceded that the official-capacity claims are barred by Eleventh Amendment immunity, Doc. 81 at 3. As such, the Court dismisses the official-capacity claims against the individual Defendants.

### II.    Fourteenth Amendment Claims

Dawn asserts two similar claims under the Fourteenth Amendment. Count II alleges a Fourteenth Amendment violation for deprivation of familial association, Doc. 53 ¶¶ 50–59, while Count V claims deprivation of companionship and society, *id.* ¶¶ 83–89. These claims are foreclosed by applicable precedent.

First, to establish a deprivation of familial association, a plaintiff must show that "that the state action was intentionally directed at the familial relationship." *Partridge v. City of Benton*, 929 F.3d 562, 568 (8th Cir. 2019). In *Partridge*, the Eighth Circuit rejected a similar claim in the context of a police shooting. *Id.* There, a 17-year-old undergoing a mental health crisis was shot and killed by the police following an armed confrontation. *Id.* at 564. But the Court found the Fourteenth Amendment familial-relationship claim foreclosed because there was no allegation that the shooting was directed at the relationship between the parents and the child. *Id.* at 568.

4

Here, the TAC suffers from the same defect. There are no allegations that the individual Defendants aimed to disrupt the familial relationship, merely that Defendants failed to meet their "duty of care which resulted in the wrongful death." Doc. 53 ¶ 59. And "finding a constitutional violation based on official actions that were not directed at the parent-child relationship would stretch the concept of due process far beyond the guiding principles set forth by the Supreme Court." *See Russ v. Watts*, 414 F.3d 783, 790 (7th Cir. 2005) (en banc) (collecting cases).

Similarly, Count V alleges a similar Fourteenth Amendment claim for Dawn's loss of society and companionship with her daughter. While the Eighth Circuit has recognized a constitutionally protected liberty interest in the companionship of parents with their children, it emphasized that "[p]rotecting familial relationships does not necessarily entail compensating relatives who suffer a loss as a result of wrongful state conduct, especially when the loss is an indirect result of that conduct." *Harpole v. Arkansas Dep't of Hum. Servs.,* 820 F.2d 923, 927–28 (8th Cir. 1987). Significantly, other circuits have declined to extend the Fourteenth Amendment companionship right to parents and their adult children, except when an adult child is unemancipated. *See Valdivieso Ortiz v. Burgos*, 807 F.2d 6, 9 (1st Cir. 1986); *see also Willauer v. Chester Cnty. Intermediate Unit*, 2025 WL 2377680, at *14 (E.D. Pa. Aug. 14, 2025). But Dawn has not identified—and the Court has not found—any cases in the Eighth Circuit extending this right to a parent and their adult children. *See, e.g.*, *Ellingson v. Piercy,* 2016 WL 2745868, at *10 (W.D. Mo. May 11, 2016) (refusing to extend Fourteenth Amendment loss of companionship claim to a relationship between a parent and adult child); *see also Harpole*, 820 F.3d at 928 (highlighting this distinction with apparent endorsement).

Dawn has not pled any facts indicating that Brittany was an unemancipated adult at the time of her death, and the documents attached to the TAC confirm that she was well over 18 at the time of her death. Doc. 53-3 ("Brittany Ashton Berry, age 32[.]"). This Court will follow the well-

worn path taken by other courts and decline to extend the companionship-and-society right to parents and their adult children. Accordingly, the Court dismisses Counts II and V with prejudice.[2]

### III.   Eighth Amendment Claims

Dawn also advances an Eighth Amendment claim. Doc. 53 ¶¶ 42–49. The individual Defendants, in turn, assert quailed immunity. Doc. 80 at 10–12. But because Dawn fails to allege actual knowledge of an objectively serious medical need, the Court dismisses Count I on that basis.

The Eighth Amendment's prohibition on "cruel and unusual punishment" has been extended to protect prisoners from deliberate indifference to their serious medical needs, including the risk of suicide. *A.H. v. St. Louis Cnty.*, 891 F.3d 721, 726 (8th Cir. 2018). The test for deliberate indifference "requires both an objective and a subjective analysis." *Whitney v. City of St. Louis*, 887 F.3d 857, 860 (8th Cir. 2018). A plaintiff must show both the objective prong—that the victim "suffered from an objectively serious medical need"—and the subjective prong—that "the defendant knew of, yet deliberately disregarded, that need." *Headley v. Centurion of Missouri LLC*, No. 2:23-CV-52-HEA, 2025 WL 973837, at *4 (E.D. Mo. Mar. 31, 2025) (citing *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011)). "Deliberate disregard is a mental state equivalent to criminal-law recklessness, which is more blameworthy than negligence, yet less blameworthy than purposely causing or knowingly bringing about a substantial risk of serious harm to the inmate." *Id.*

Even assuming that Brittany suffered from a serious medical need, Dawn has failed to plead the subjective prong. Critically, it is not enough for her to claim that "Defendants knew or reasonably should have known of B[rittany]'s mental health issues." Doc. 53 ¶ 46. Rather, the subjective standard requires Dawn to allege that the Defendants had *actual knowledge* about Brittany's risk for

---

[2] Given Dawn's "inability to allege facts sufficient to state a claim against [Defendants] even after [repeatedly] being granted leave to amend," the Court finds the default rule of dismissal with prejudice is warranted for her Fourteenth Amendment and other federal claims. *See Ellis v. Nike USA*, 158 F.4th 932, 937 (8th Cir. 2025).

suicide. *See Whitney*, 887 F.3d 857 at 860 (8th Cir. 2018) (affirming dismissal where a complaint failed to allege that information about a decedent's suicidality was relayed to a supervising officer). And Dawn does not claim that any of the individual Defendants knew Brittany was suicidal. The only relevant allegation in the TAC is that a state court previously had noted Brittany's "serious mental health issues." Doc. 53-2. But neither that description, nor any of the allegations in the TAC, demonstrate subjective knowledge that Brittany was at a heighted risk of suicide.

Other cases in this Circuit denying a motion to dismiss Eighth Amendment claims in the jail suicide context have done so where there are specific and detailed factual allegations about a decedent's suicide risk. *See Williams v. Mo. Dep't of Corr.*, No. 1:24-CV-54-ACL, 2025 WL 48422, at *1–3 (E.D. Mo. Jan. 8, 2025) (finding that decedent had prior suicide attempts and multiple reports of his deteriorating mental health); *Bouton v. Missouri*, No. 2:22-CV-10-SPM, 2023 WL 402018, at *1 (E.D. Mo. Jan. 25, 2023) (same). But beyond a general conclusory allegation, Dawn fails to specifically allege that the Defendants were actually aware of the state court's finding of "serious mental health issues." Doc. 53 ¶ 31. Moreover, even if they had been aware of this sentencing consideration, it is far from clear that it would have put them on notice of an objectively serious medical issue given the 9-month gap between that finding and her later revocation, Doc. 53-1 at 1–3, or that a vague reference to "serious mental health issues" meant suicidal ideation. Given the lack of specific factual allegations underlying the Eighth Amendment claim, the Court dismisses Count I with prejudice.[3]

---

[3] The Court notes that Dawn included various facts in her Complaint regarding MDOC's alleged failure to comply with Missouri's Sunshine Law. MO. REV. STAT. § 610.027, Doc. 53 ¶¶ 34–36. If she can obtain further information from that process bolstering her Eighth Amendment or other federal claims, that may justify a motion under Federal Rule of Procedure 60(b)(2) to reopen this case given the discovery of new evidence.

## IV.   Municipal-Liability Claims

Dawn also advances two *Monell* claims, asserting that the Defendants adopted a policy or custom of Eighth Amendment violations and failed to train or supervise WERDCC employees. Doc. 53 ¶¶ 60–82. But the Eighth Circuit has made clear that, without an underlying constitutional violation, there is "no basis for *Monell* liability." *Brabbit ex rel. Bild v. Capra*, 59 F.4th 349, 354 (8th Cir. 2023) (no liability for a policy or custom claim where there was no underlying constitutional claim); *see also Braun v. Burke*, 983 F.3d 999, 1003–04 (8th Cir. 2020) (same for failure to supervise). Because Dawn fails to plead an underlying constitutional violation, the Court dismisses her municipal-liability claims with prejudice.

## V.   State Law Claims

Dawn's final claims are for wrongful death and lost chance of survival under state law. Doc. 53 ¶¶ 90–105. Once a district court dismisses all the claims over which it has original jurisdiction, it has discretion to decline the exercise of supplemental jurisdiction. *Aldridge v. City of St. Louis*, 75 F.4th 895, 901 (8th Cir. 2023). District courts must consider "the circumstances of the particular case, the nature of the state law claims, the character of the governing state law, and the relationship between the state and federal claim[.]" *Id.* (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997)). Generally, when "all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.* Dawn has not advanced, and the Court cannot identify, any special considerations that would counsel the continuing exercise of jurisdiction here. Therefore, the Court dismisses Counts VI and VII without prejudice.

8

**CONCLUSION**

Accordingly, the Court **GRANTS** the individual Defendants' [79] Motion to Dismiss, **DISMISSES** Plaintiff Dawn Berry's federal claims with prejudice, and **DISMISSES** her remaining state-law claims without prejudice. The Court will issue a separate Order of Dismissal to accompany this memorandum and order.

So ordered this 1st day of May 2026.

ZACHARY M. BLUESTONE
UNITED STATES DISTRICT JUDGE

9